FILED

2010 Dec-08  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | |
|---|---|
| **ALBERT L. FOSTER,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | |
| ] | **CV-10-BE-0796-S** |
| **JEFFERSON COUNTY FINANCE** ] | |
| **DEPARTMENT, et. al.** ] | |
| ] | |
| **Defendants.** ] | |
| ] | |
| ] | |
| ] | |

## MEMORANDUM OPINION

This matter, alleging gender discrimination and discriminatory retaliation, brought pursuant to Title VII; violation of Plaintiff's First Amendment rights, brought pursuant to Section 1983; and the violation of his right to privacy under Alabama law, is before the court on Defendants' "Renewed Motion to Dismiss" (doc. 12).  This motion has been fully briefed.  For the reasons stated in this opinion, the court GRANTS the motion in part and DEFERS ruling on it in part.

## I.  PROCEDURAL BACKGROUND

On April 2, 2010, *pro se* Plaintiff, Albert L. Foster, filed this suit alleging harassment, intimidation and retaliation against the Jefferson County Finance Department; Commissioner Bettye Fine Collins; Travis Hulsey; Danny Panos; Annie R. Ward; and Dorthea Pruitt. (Doc. 1). The original Complaint attached copies of EEOC documents, including a Charge of Discrimination with the box checked for sex discrimination but not retaliation.  The box listing

"particulars" does not refer to retaliation.   Plaintiff also filed a motion for leave to proceed *in forma pauperis* (doc. 2)*,* which this court granted (doc. 3), and a motion to appoint counsel (doc. 2), which this court denied (doc. 3).  Plaintiff subsequently filed an Amended Complaint asserting claims entitled gender harassment; retaliation; outrage; invasion of privacy; negligent and wanton retention; and negligent/wanton supervision and training.  Although the Plaintiff listed all Defendants sued in the original Complaint in the style of the Amended Complaint, the only Defendant listed in the section of the Complaint entitled "Parties" was "Defendant, Jefferson County Commission, Finance Department."  (Doc. 4, ¶ 4).  The Amended Complaint did not attach the EEOC documents but paragraph 2 did assert that Foster had exhausted his administrative remedies regarding gender discrimination.  It did not, however, refer to retaliation.

The Defendants filed a Motion to Dismiss (doc. 7).  To clarify matters before entering a briefing schedule on the motion, the court subsequently entered an Order requiring Plaintiff to notify it in writing whether he intended to pursue claims against the individual Defendants. (Doc. 8).  The Plaintiff responded, and filed a Second Amended Complaint that listed the following Defendants both in the style and body: Jefferson County Finance Department[1]; Bettye Fine Collins, individually and in her official capacity; Travis Hulsey, individually and in his official capacity; Danny Panos, individually and in his official capacity; and Annie Ward, individually as to the state claim.  (Doc. 10).  The Second Amended Complaint does not list Dorthea Pruitt in the style of the case, does not list her in the section of the Amended Complaint

---

[1]The heading or style of the Second Amended Complaint actually lists as the first Defendant "Jefferson County Comm.," but Section II of that document, entitled "Parties," lists "Jefferson County Finance Department" as the only Defendant that is not an individual.  The titles of Sections  III and IV state that those claims are asserted against "Jefferson County."

entitled "Parties," and does not otherwise assert claims against her in the body of the Amended Complaint.

The Second Amended Complaint asserts the following claims:  discriminatory retaliation and possibly gender discrimination in violation of Title VII and Section 1983 - asserted against Jefferson County Finance Department only; violation of Plaintiff's First Amendment right to free speech brought pursuant to Section 1983 - asserted against Jefferson County [Finance Department], Betty Fine Collins, Travis Hulsey, and Danny Panos; and invasion of privacy under Alabama law - asserted against Annie Ward only.  The Second Amended Complaint does not assert claims asserted in previous complaints for outrage, negligent and wanton retention, and negligent/wanton supervision and training.  Further, it does not attach EEOC documents or assert that the administrative remedies have been exhausted.

Defendants subsequently filed the motion currently before this court, "Renewed Motion to Dismiss," requesting the dismissal of all claims.  The motion to dismiss does not raise the defense of qualified immunity as to the claims brought pursuant to Section 1983 against state Defendants sued in their individual capacity.

## II.  FACTS

According to Foster's allegations, on February 3, 2008, the Jefferson County Commission employed Foster as a buyer and assigned him to the Jefferson County Finance Department. Defendant Annie Ward, Foster's supervisor, constantly humiliated Foster, berating him loudly and in public about his job performance and referring to "his lack of intelligence, how [his wife] looked, and their possible relationship difficulties."  (2nd Am. Compl., Doc. 10, ¶ 22)  She also stated that "she was holding him to a higher standard since he was the first African American

3

man[2] to hold the position."  (2nd Am. Compl., Doc. 10, ¶ 12).

On or about January 12, 2009, Foster received his annual work evaluation.  This evaluation was a positive appraisal of his work, but it noted two areas for improvement which the Second Amended Complaint does not identify.  Fifteen days later, on January 27, after another episode of Ward's haranguing behavior, Foster complained "about [Ward's] manner of communicating with him." (2nd Am. Compl., Doc. 10, ¶ 14).   The Second Amended Complaint does not specify to whom Foster complained, or whether he specifically complained about discrimination.  It does state that he "was immediately threatened with the revocation of the favorable appraisal and the substitution of a discipline for insubordination," but it does not state who made these threats.  On January 29, 2009, two days after Foster's complaint, he received the threatened disciplinary actions, and was fired soon thereafter.  The Second Amended Complaint does not state who made the decision to fire him.

After his firing, Foster requested and received a hearing with Defendant Collins to address his complaint.  The Second Amended Complaint states that the investigation, presumably involving the hearing on his termination, "substantiated some of his claims" but does not specify which claims and does not state what specifically was addressed at the hearing about "his complaint."  The Second Amended Complaint does not state whether Foster raised at the hearing the issue of discrimination on the basis of his gender; of retaliation for complaining of discrimination; or of violation of his First Amendment rights.

---

[2] Although the Second Amended Complaint does not state Ward's race, the First Amended Complaint stated that Ward is black.  The Second Amended Complaint does not contain any allegations of discrimination based on race.

### III.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. at 47).   It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).   Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).  To be plausible on its face, the claim must contain enough facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 557).

The Supreme Court has recently identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. C. at 1949-50. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1150. Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense. . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. Id.

*Supervisory Liability Standard*

According to well-established Eleventh Circuit law, a plaintiff may not bring § 1983 claims against supervisory officials based on vicarious liability or the doctrine of *respondeat superior. Keating v. City of Miami,* 598 F.3d 753, 762 (11th Cir. 2010); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). "[S]upervisors are liable under § 1983 [in their individual capacities] 'either when the supervisor personally participates in

the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" *Keating*, 598 F.3d at 762 (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)).  Where the alleged wrongful acts are those of a subordinate, a plaintiff may establish a causal connection between a supervisory official's acts and those wrongful acts in any of the following ways: (1) alleging facts supporting the supervisor's notice of a widespread history of abuse that he neglected to correct (*Gonzales*, 325 F.3d at 1234); (2) alleging facts supporting the supervisor's implementation of a custom or policy that resulted in deliberate indifference to constitutional rights (*Id.* at 1234-35); or (3) alleging "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." (*Id.* at 1235).

## IV.  ANALYSIS

### A.  DORTHEA PRUITT

As the Second Amended Complaint does not refer to Dorthea Pruitt in the style or in the body, the court finds that Foster has abandoned his original claims against Pruitt.  In the alternative, the court finds that the Second Amended Complaint fails to state a claim against Pruitt because it does not "contain sufficient factual matter, accepted as true, to 'state a claim [against her] for relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570). The motion to dismiss is due to be granted as to all claims asserted against Dorthea Pruitt and, therefore, the court will dismiss her as a party Defendant.

### B.  JEFFERSON COUNTY FINANCE DEPARTMENT

In the instant case, Foster has not clearly identified the one Defendant that is *not* an individual.  The style of the Second Amended Complaint lists that Defendant as "Jefferson County Comm." Section II, which merely lists parties, identifies the entity as "Jefferson County Finance Department." The *titles* of Sections III (asserting Title VII claims) and IV (asserting Section 1983 claims) identify the party that those claims are asserted against as "Jefferson County."  The texts of Sections III and IV are not enlightening.  The text of Section III refers to "The Commission" as Foster's employer and then to Foster's "employment in the Finance Department" but does not refer to Jefferson County.  The text of Section IV refers generically to "the defendant."

In their motion, Defendants assume that the non-individual entity sued is the Jefferson County Finance Department and assert that it is due to be dismissed because it is merely an operating subdivision of a county and is not a legal entity subject to suit.  In his responsive brief and again in his sur-reply, Plaintiff does not correct Defendant's identification of the non-individual sued as the Finance Department.  Rather than clarifying that he was suing another entity, Foster acknowledges that he is suing the Finance Department but insists that the department is subject to suit.  He does not, however, provide any support for that assertion. Because Section II of the Second Amended Complaint, which lists the parties, specifically identifies the non-individual party sued as the Jefferson County Finance Department and because Foster acknowledges in his responsive brief that the Finance Department is the non-individual Defendant sued, the court will deem the Jefferson County Finance Department to be the only non-individual Defendant.

The court must, therefore, address Defendants' assertion that the Jefferson County Finance Department is not a suable entity.  Federal Rule of Civil Procedure 17 provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  Fed. R. Civ. P 17(b); *see Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  Accordingly, the court must look to Alabama law to determine whether the Finance Department is subject to suit.

Under Alabama law, a county "is a body corporate, with power to sue or be sued in any court of record."  Ala. Code § 11-1-2 (1975) (as amended).  However, in the instant case, Foster has not sued *Jefferson County* or the governing body of Jefferson County; he has sued a *department* of Jefferson County.   Alabama law generally provides that county departments are not legal entities subject to suit.  *See, e.g., Dean v. Barber*, 951 F.2d at 1214 (stating that sheriff's departments and police departments are not legal entities subject to suit); *White v. Birchfield*, 582 So. 2d 1085, 1087 (Ala. 1991) (holding that a county sheriff's department "is not a legal entity subject to suit"); *Rogers v. Lee County, Ala.*, CV-10-289-TMH, 2010 WL 2180324, at *1 (M.D. Ala. Apr. 14, 2010) (dismissing suit against sheriff's department, county detention center, and county medical department because none was a legal entity subject to suit).  This provision is generally a matter of form rather than substance, acknowledging that the proper defendant is the local governing entity rather than a department of that entity.

Applying Alabama law to the instant suit, the court finds that the Jefferson County Finance Department is not a suable entity and it is due to be dismissed as a party Defendant.  Further, all claims asserted against it in Section III (Title VII) and Section IV ( § 1983 - Violation of First Amendment) of the Second Amended Complaint are due to be dismissed.  As Section

III's  claims of discriminatory retaliation, and possibly gender discrimination, in violation of Title

VII are only asserted against that entity, no Title VII claims remain, and all Title VII claims are

likewise due to be dismissed.

However, the court does not wish to be draconian in insisting on proper form, particularly

where the litigant is *pro se.*  Therefore, it will provide Foster another opportunity to amend its

Second Amended Complaint but only (1) to substitute a suable entity in place of the Jefferson

County Finance Department, if he wishes to do so; and (2) to state facts supporting Foster's

fulfillment of administrative prerequisites to filing suit pursuant to Title VII.   The court notes

that the original Complaint and first Amended Complaint attached EEOC documents or referred

to them, but the Second Amended Complaint, which is Foster's current pleading, does not

provide information to support the exhaustion of administrative remedies, as required before

filing a Title VII suit.  42 U.S.C. § 2000e-5(e)(1); *see Increase Minority Participation by*

*Affirmative Change Today (IMPACT) v. Firestone*, 893 F.2d 1189, 1196 (11th Cir. 1990) (Title

VII plaintiffs must exhaust administrative remedies before filing suit in federal court).

### C.  SECTION 1983 CLAIMS

With the dismissal of Jefferson County Finance Department, the only federal claims that

remain at this time are those asserted in Section IV against Defendants Bettye Fine Collins,

Travis Hulsey, and Danny Panos in their official and individual capacities.  Section IV's cause of

action purports to be based upon Defendants' violation of Foster's constitutional right under the

First Amendment to complain about gender based harassment in the work place and brought

pursuant to 42 U.S.C. § 1983.  However, Section 1983 does not provide for the liability of all

persons who violate a plaintiff's constitutional rights; rather, it only provides for the liability of

10

such persons who act "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . ." 42 U.S.C. § 1983.  Put another way, liability under Section 1983 only attaches to those who act under color of state law.  Defendants point out that no where in the Second Amended Complaint does Foster allege that these Defendants were acting under color of state law.  However, the court will not dismiss the case simply because Foster has failed to insert these particular words *if* the Second Amended Complaint states sufficient facts to allege that these Defendants were acting under color of state law and violated Foster's First Amendment rights.

   *1.  Claims against Travis Hulsey and Danny Panos*

   Defendants Hulsey and Panos are listed in the style of the Second Amended Complaint and in Section II, identifying the parties; Section II identifies Hulsey and Panos as Foster's supervisors, presumably in the Jefferson County Finance Department.  However, the Second Amended Complaint does not otherwise contain any specific allegations against these Defendants.  Significantly, Section IV of the Second Amended Complaint, setting forth the Section 1983 claims, does not even mention these Defendants.  Section IV does purport to incorporate all preceding paragraphs; however, none of those prior paragraphs – except the mere listing of parties in Section II – contains a specific statement about these Defendants and certainly does not allege specific facts involving these Defendants.  According to well-established Eleventh Circuit law, a plaintiff may not bring § 1983 claims against supervisory officials based on vicarious liability or the doctrine of respondeat superior.  *Keating*, 598 F.3d at 762; *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994).  Rather, "supervisors are liable under § 1983 'either when the supervisor personally participates in the alleged

11

constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" *Keating*, 598 F.3d at 762 (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)).

The court finds that Foster's Second Amended Complaint does not contain "sufficient factual matter, accepted as true, to state a claim for relief" against Defendants Hulsey and Panos. *See Iqbal*, 129 S. Ct. at 1948 (quoting those words from the Supreme Court decision in *Twombly*, 550 U.S. at 570). It does not state any facts whatsoever supporting allegations that either Hulsey or Panos personally participated in the alleged First Amendment violation or that a causal connection existed between their actions and a constitutional violation  It does not allege that they are state actors or provide facts to support such an allegation. It does not allege that, with respect to Foster's termination, Hulsey and Panos are decisionmakers that "possess[] *final authority* to establish *municipal policy* with respect to the action ordered." *Quinn v. Monroe County*, 330 F.3d 1320 (11th Cir. 2003) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Simply naming Hulsey and Panos as Defendants and Foster's supervisors, without more, is not enough to state a cause of action against them under Section 1983.

Therefore, the court finds that the claims against Defendants Hulsey and Panos in their official and individual capacities are due to be dismissed, and further, that Hulsey and Panos are due to be dismissed as party Defendants.

### 2. Claims against Bettye Fine Collins

Defendants argue that the official capacity claims against Defendant Collins are due to be dismissed because they are, in essence, claims against Jefferson County. *See Monell v. Department of Social Servs. of New York*, 436 U.S. 658, 691 n. 55 (1978) (stating that "official

capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). As Defendants point out, when a plaintiff sues the governmental entity *and* governmental officials in their official capacity, courts typically dismiss the official capacity claim as "redundant." *See, e.g., Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). These official capacity suits against a local governmental official are, in actuality, actions against the governmental body that the official represents. *Id.* However, in the instant case, Foster has not sued Jefferson County, the governmental entity; therefore, the court will not dismiss the official capacity claim on that basis.

Defendants also assert that official capacity claims against Defendant Collins are due to be dismissed because the Second Amended Complaint does not identify any policy, custom or procedure of Jefferson County that caused Foster's alleged constitutional deprivation. The Supreme Court has clearly determined that neither a governmental entity nor its officials sued in their official capacity can be liable under Section 1983 for an injury inflicted solely by their subordinate employees or agents. *Monell*, 436 U.S. at 693-94. In other words, an official sued in his or her official capacity cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 694. Rather, liability attaches to local governing bodies or their official sued in their official capacities when "official policy []inflicts the injury;" that is, "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Id.* at 690 & 695.

Therefore, in the instant case, the court must determine whether Foster has alleged with sufficient supporting facts that his constitutional deprivation occurred pursuant to a custom or policy or ordinance or official decision of Jefferson County, and thus, is properly asserted against

13

a Jefferson County Commissioner in her official capacity.

The Second Amended Complaint alleges numerous facts relating to Annie Ward's conduct, but as noted previously, Collins cannot be held liable in her official capacity solely for Ward's conduct; liability would only attach if a custom, policy, ordinance, or official decision of Jefferson County supported or caused it.  The Second Amended Complaint does not refer, specifically or generally, to any Jefferson County custom or ordinance.  It does, however, refer to a post-termination hearing with Defendant Collins addressing his termination; paragraph 16, which Section IV incorporates by reference, states as follows:

> Plaintiff sought and was granted a hearing addressing his complaint with Bettye Fine Collins.  No remedial action was ever taken and even though the investigation substantiated some of his claims he remained terminated.

(Doc. , ¶ 16).  The court must determine whether this language sufficiently alleges the existence of an official decision of Jefferson County that establishes its official policy.

"Municipal[/county]  liability may arise with regards to an employment decision, such as termination, provided that the decisionmaker 'possesses *final authority* to establish *municipal policy* with respect to the action ordered.'"  *Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003) (emphasis in original).  Where an official's termination decisions are subject to "meaningful administrative review," that official does not have final authority to establish municipal policy and his or her decisions do not represent municipal policy.  *See id.* (quoting *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997)); *see also Manor Healthcare Corp v. Lomelo*, 929 F.2d 633, 638 (11th Cir. 1991) (determining that the mayor's zoning decisions could not set municipal policy where city council could override mayor's veto of zoning ordinances); *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) (chief of police was not

14

final policymaker to establish municipal policy where city manager could reverse his decisions).

According to the Second Amended Complaint in the instant case, some unnamed person threatened Foster with discipline as a result of his complaints against Ward and subsequently fired him. Because Foster requested and received a review of the decision – the hearing with Defendant Collins – the *original* decision to fire Foster was not a final decision establishing the policy of Jefferson County and cannot form the basis for Jefferson County liability. The real question is whether the hearing before Defendant Collins resulted in such a final decision. Mindful of the fact that Foster is a *pro se* Plaintiff and did not use the particular "magic words" that attorneys employ, the court finds that Foster has nevertheless alleged sufficient facts that Collins was an official policymaker for the county and that her review of his termination resulted in a final decision establishing policy for Jefferson County.

However, that determination does not necessarily mean that Foster has stated a claim for relief under Section 1983. Foster must also allege that the Collins's action proximately caused a deprivation of a federally protected right. In the Second Amended Complaint, Foster states as follows:

> 14. On or about January 27, 2009, after another session of Ms. Ward's loud and belittling behavior, plaintiff complained about her manner of communicating with him. Plaintiff was immediately threatened with the revocation of the favorable appraisal and the substitution of a discipline for insubordination.

> 15. On or about January 29, 2009, plaintiff received the threatened disciplinary actions and was summarily fired soon thereafter.

> 16. Plaintiff sought and was granted a hearing addressing his complaint with Bettye Fine Collins. No remedial action was

15

ever taken and even though the investigation substantiated
some of his claims he remained terminated.

***

19.  The defendant violated the plaintiff [sic] constitution [sic]
rights to complain about gender based harassment in the work
place.  Defendant discriminated on the basis of constitutionally
protected speech with respect to his employment contract by
refusing to contract with plaintiff on term [sic] free of gender
bias with respect to discipline and/or termination and other
adverse terms, conditions and privileges of employment and in
violation, among other laws 42 U.S.C. §§ 1983 and 2000e *et.
Seq.*, as amended by the Civil Rights Act of 191 and the
Fourteenth Amendment to the U.S. Constitution.

(2nd Am. Compl. Doc. 10).  Thus, Foster is alleging that his speech – complaints about gender

based harassment – was protected speech.

"[T]he law is well-established that the state may not demote or discharge a public

employee in retaliation for speech protected under the first amendment. . . ."  *Maggio v. Sipple*,

211 F.3d 1346, 1351 (11th Cir. 2000) (quoting *Bryson v. City of Waycross*, 888 F.2d 1562, 1565

(11th Cir. 1989)).  But, all speech is not protected speech; "a public employee's right to freedom

of speech is not absolute." *Id.*  Thus, Foster must state sufficient facts that, if proven, would

establish his speech as protected speech under the First Amendment.   Accordingly, the court

must determine whether Foster has done so.

The Eleventh Circuit has explained its process of evaluating First Amendment retaliation

claims as follows:

This circuit has developed a four-part test to determine whether an employee
suffered such retaliation.  First, a court must determine whether the
employee's speech may be fairly characterized as constituting speech on a
matter of public concern.  If so, the district court must weigh the employee's
first amendment interests against the interest of the state, as an employer, in

promoting the efficiency of the public services it performs through its employees. Should the employee prevail on the balancing test, the fact-finder determines whether the employee's speech played a substantial part in the government's decision to demote or discharge the employee. Finally, if the employee shows that the speech was a substantial motivating factor in the employment decision, the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.

*Watkins v. Bowden*, 105 F.3d 1344, 1352-53 (11th Cir. 1997).

Step one of this balancing test requires the court to focus on whether the speech at issue is one of public concern, which is generally protected speech, or of personal concern, which is generally not protected. *See Badia v. City of Miami*, 133 F.3d 1443, 1445 (11th Cir. 1998). The court must analyze the "content, form, and context" of a plaintiff's speech to determine its nature. *Connick v. Myers*, 461 U.S. 138, 147 (1983). "For an employee's speech to rise to the level of public concern, it must relate to a matter of political, social, or other concern to the community." *Watkins*, 105 F.3d at 1353. "Absent extraordinary circumstances, however, First Amendment protection remains unavailable when 'a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest . . . .'" *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) (quoting *Connick*, 461 U.S. at 147). In addition to considering the content, form, and context of speech, the court will also consider "the employee's attempts to make the concerns public, and the employee's motivation in speaking." *Watkins,* 105 F.3d at 1353. The Eleventh Circuit has recognized that "[a]n employee's speech will rarely be entirely private or entirely public" and accordingly, courts must determine whether the "main thrust" of the employees' speech was private or public. *Morgan*, 6 F.3d at 755.

In the instant case, Foster's Second Amended Complaint states that his speech was about

"gender based harassment in the workplace" – discrimination directed at him personally; it does not state that he complained about discrimination directed at anyone else. While it does not state to whom he complained, it certainly does not state that his complaints occurred in a public forum. He does not allege that the subsequent hearing on his termination had any other purpose than to address his private grievance – to get his insubordination charge overturned and his job back.

Given those facts, this court turns to Eleventh Circuit cases for guidance on whether the "main thrust" of Plaintiffs' speech was public or private. In many respects, the speech in the instant case is analogous to that in *Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993). In *Morgan*, one of the plaintiff's co-workers complained about her supervisor's sexual harassment and named plaintiff as a corroborating witness. The plaintiff met with the department superintendent, objected to her supervisor's behavior, and subsequently filed her own sexual harassment charges against that supervisor. *Morgan*, 6 F.3d at 752-53. After retaliation occurred, the plaintiff filed a Section 1983 suit alleging retaliation for exercising her First Amendment right to free speech. *Id.* at 753. The Eleventh Circuit acknowledged that the plaintiff's "speech about the harassment of her co-worker contain[ed] a public speech aspect" but found that "the main thrust of [plaintiff's] speech took the form of a private employee grievance." *Id.* at 755. In analyzing the form, context, and content of the plaintiff's speech, the Court of Appeals noted that the speech "largely focused on her supervisor's behavior and its effect on her work, took the form of complaints to official bodies, did not in any way draw 'the public at large or its concerns into the picture,' and 'was driven by her own entirely rational self-interest in improving the conditions of her employment.'" *Maggio*, 211 F.3d at 1352 (explaining and quoting *Morgan*, 6 F.3d at 755).

18

Therefore, the Court of Appeals affirmed the grant of summary judgment in favor of the defendants on the Section 1983 claim, concluding that the speech was not primarily public speech and, thus, was not entitled to First Amendment protection.

Other Eleventh Circuit cases "have also held that no First Amendment protection attaches to speech that – for personal benefit – exposes *personally* suffered harassment or discrimination." *Tindal v. Montgomery County Comm'n*, 32 F.3d 1535, 1539-40 (11th Cir. 1994); *see Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir. 2000) (finding that plaintiff's testimony at a departmental grievance hearing to support her supervisor's claims of discrimination was not speech of public concern; the "relevant inquiry" is not whether the public might have an interest in the subject of the employee's speech but whether plaintiff's "purpose was to raise issues of public concern"); *Renfroe v. Kirkpatrick*, 722 F.2d 714, 715 (11th Cir. 1983) (finding that nontenured teacher's grievance did not relate to a matter of public concern and was not protected under the First Amendment); *see also Connick v. Myers*, 461 U.S. 138 (1983) (stating that the question of whether a public employee's speech falls under the protections of the First Amendment depends upon whether the speech relates primarily to matters of public concern or matters of personal interest to the employee himself).

Applying this law to the instant case, the court must conclude that Foster has not alleged that he participated in constitutionally protected speech.  Taking the allegations in the Second Amended Complaint to be true, the only speech alleged involves private speech focused on his own grievances at work.  Like the plaintiff in *Morgan*, Foster's complaints involve allegations about his supervisor's behavior directed at him personally and the effect of that behavior and his complaints about that behavior on his own employment.  Further, Foster's Second Amended

Complaint does not allege that he drew the public into the matter or that his complaints were made in any public forum.  It does not even state to whom he first complained, and indicates that the hearing before Defendant Collins was to address "his complaint" and obtain "remedial action." In short, Foster's Second Amended Complaint does not allege that he engaged in speech of public concern and does not state facts that would support such an allegation.  As such, he has alleged no speech protected by the First Amendment and no deprivation of a federally protected constitutional right.  Because the deprivation of a federally protected right is a *prima facie* element of a Section 1983 case, Foster's Second Amended Complaint does not sufficiently allege a claim under Section 1983 and that claim is due to be dismissed.  Further, as the Section 1983 claim is the only claim asserted against Bettye Fine Collins, the court finds that she is due to be dismissed as a party Defendant.

### D.  INVASION OF PRIVACY CLAIM

Finally, Foster brings a claim for invasion of privacy under Alabama law and against Defendant Annie Ward.  The court will defer ruling on the motion to dismiss as to this claim under Alabama law; it will wait to see whether Foster once again amends his complaint and whether any federal claims will proceed before it addresses the invasion of privacy claim.

### V.  CONCLUSION

For the reasons stated in this Memorandum Opinion, the court finds as follows:

•    All claims asserted against Dorthea Pruitt are due to be dismissed, because Foster has abandoned these claims or, alternatively, because those claims fail to state a claim against which relief can be granted.  Further, Pruitt is due to be dismissed as a party Defendant.

•    All claims asserted against Jefferson County Finance Department are due to be dismissed,

because it is not a suable entity; however, the court will grant Foster ONE FINAL

OPPORTUNITY to amend his Complaint, but only (1) to substitute a suable entity in

place of the Jefferson County Finance Department as to the Title VII claims, if he wishes

to do so; and (2) to state facts supporting Foster's exhaustion of administrative remedies

as required to file a Title VII case.

- All claims against Travis Hulsey and Danny Panos in their official and individual

  capacities are due to be dismissed, because those claims do not contain "sufficient factual

  matter, accepted as true to state a claim for relief." *See Twombly*, 550 U.S. at 570.

  Further, Hulsey and Panos are due to be dismissed as party Defendants.

- All claims against Bettye Fine Collins in her official and individual capacities –  which

  are brought under Section 1983, alleging a First Amendment violation – are due to be

  dismissed because those claims do not sufficiently allege that Foster was deprived of a

  federally protected right. Further, Collins is due to be dismissed as a party Defendant.

- The court will defer ruling on the motion to dismiss as to Foster's invasion of privacy

  claim asserted against Annie Ward.

Dated this 8th day of December, 2010.

_Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE